UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JIANQIAO LU,

                                    Plaintiff,

  -against-                                                    24-cv-1023 (NSR)


GEORGE HERMANS, SULAHUDDEN AZIM,
and WESTCHESTER COUNTY,
                                    Defendants.
-------------------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF COUNTY DEFENDANTS' MOTION TO DISMISS


June 10, 2024
White Plains, New York

**JOHN M. NONNA**
Westchester County Attorney
*Counsel for the County of Westchester*
By:  Robert Taglia, Esq.
Assistant County Attorney
148 Martine Avenue, Suite 600
White Plains, New York 10601
(914) 995-5103
rbta@WestchesterCountyNY.gov

## Table of Contents

PRELIMINARY STATEMENT ................................................................................. 1

FACTS ALLEGED IN THE COMPLAINT ............................................................ 2

LEGAL STANDARDS .......................................................................................... 4

    12(B)(6) MOTION.......................................................................................... 4

    SECTION 1983 CLAIM .................................................................................. 5

    FIRST AMENDMENT RETALIATION ........................................................ 6

    *MONELL* ...................................................................................................... 7

LEGAL ARGUMENT........................................................................................... 11

    PLAINTIFF FAILS TO PLAUSIBLY ALLEGE FIRST AMENDMENT

    RETALIATION ............................................................................................. 11

        A.  Cell Search/Misbehavior Report.................................................... 12

        B.  Cell Transfer/Termination from Employment/Confinement ........... 13

        C.  Defamation..................................................................................... 15

        D.  Employment Ban............................................................................ 16

    THE COMPLAINT FAILS TO STATE AN ACTIONABLE *MONELL* CLAIM................. 16

        A.  Widespread Custom and Practice - De Facto Policy .................... 17

        B.  Failure to Train/Discipline ............................................................ 19

CONCLUSION..................................................................................................... 22

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) .............................................................. 2, 4

*Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997) .................................................................. 7

*Bey v. Eggleton*, 96-cv-3302 (DLC), 96-cv-4288 (DLC), 96-cv-4289 (DLC), 1998 WL
    118158, 1998 U.S. Dist. LEXIS 3147 (S.D.N.Y. Mar. 16, 1998) .......................................... 12

*Buari v. City of New York*,  530 F. Supp. 356 (S.D.N.Y. 2021) ............................................. passim

*Carmichael v. City of New York*, 34 F. Supp. 3d 252 (E.D.N.Y. 2014) ......................................... 7

*Cash v. County of Erie*, 654 F.3d 324 (2d Cir. 2011) ..................................................................... 7

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................................................... 5

*Chavis v. Chappius*, 618 F.3d 162 (2d Cir. 2010) ......................................................................... 4

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427 (1985)........................................ 6

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)..................................................................... 7

*Clancy v. Town of Southold*, 15-cv-7321 (DRH)(SIL), 2018 WL 4185706, 2018 U.S. Dist.
    LEXIS 149218 (E.D.N.Y. August 31, 2018) ....................................................................... 11

*Cole v. Fischer*, 416 F. App'x. 111 (2d Cir. 2011)....................................................................... 14

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ........................................................................... 14

*Connick v. Thompson*, 563 U.S. 51 (2011) ...................................................................... 9, 19, 20

*Corbett v. City of New York*, 15-cv-09214 (GHW), 2016 U.S. Dist. LEXIS 178037 (S.D.N.Y.
    December 22, 2016)............................................................................................................ 10

*Cruz v. Vill. Of Spring Valley*, 21-cv-2073 (KMK), 2022 WL 42847, 2022 U.S. Dist. LEXIS
    24999 (S.D.N.Y. February 11, 2022).................................................................................. 10

*D'Alessandro v. City of New York*, 13-cv-930 (SLT), 2016 WL 6962516, 2016 U.S. Dist. LEXIS 16316 (E.D.N.Y. November 28, 2016)..................................................................... 19

*Dava v. City of New York*, 15-cv 08575 (ALC), 2016 WL 4532203, 2016 U.S. Dist. LEXIS 115639 (S.D.N.Y. August 29, 2016) .................................................................................. 10

*Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003) ................................................................... 6

*Dixon v. City of New York*, 14-cv-4930 (PGG), 2017 U.S. Dist. LEXIS 119042 (S.D.N.Y. July 27, 2017)....................................................................................................................... 10

*Dolan v. Connolly*, 794 F.3d 290 (2d Cir. 2015) ........................................................ 7, 13

*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009) ................................................................ 6

*Falls v.Campbell*, 17-cv-35 (KMK), 2019 WL 1255768, 2019 U.S. Dist. LEXIS 45090 (S.D.N.Y. March 19, 2019)............................................................................................... 18

*Ford v. Aramark*, 18-cv-2696 (NSR), 2020 WL 377882, 2020 U.S. Dist. LEXIS 13174 (S.D.N.Y. Jan. 23, 2020).................................................................................................. 16

*France v. County of Westchester*, 12-cv-5576 (KMK), 2016 U.S. Dist. LEXIS 44287 (S.D.N.Y. March 30, 2016)................................................................................................. 4

*Galgano v. Cty. of Putnam*, 16-cv-3572 (KMK), 2020 WL 3618512, 2020 U.S. Dist. LEXIS 116682 (S.D.N.Y. July 2, 2020) ............................................................................. 8

*George v. County of Westchester*, 20-cv-1723 (KMK), 2021 WL 4392485, 2021 U.S. Dist. LEXIS 183336 (S.D.N.Y. Sep. 24, 2021)................................................................. 19

*Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 110 S. Ct. 444 (1989) ......................... 6

*Gomez v. City of New York*, 16-cv-1274 (NGG) (LB), 2017 WL 1034690, 2017 U.S. Dist. LEXIS 38100 (E.D.N.Y. Mar. 16, 2017).......................................................................... 19

*Gomez v. Westchester County*, 18-cv-00244 (NSR), 2021 WL 4443379, 2021 U.S. Dist.
LEXIS 185670, (S.D.N.Y. Sep. 28, 2021)........................................................................ 18, 20

*Hanner v. Westchester Cty.*, 16-cv-7610 (VB), 2017 WL 6352261, 2017 U.S. Dist. LEXIS
203401 (S.D.N.Y. December 11, 2017)................................................................................... 8

*Hudson v. Palmer*, 468 U.S. 517 (1984)................................................................................. 12

*Hutchins v. Solomon*, 16-cv-10029 (KMK), 2018 WL 4757970, 2018 U.S. Dist. LEXIS
169421 (S.D.N.Y. September 29, 2018)................................................................................... 5

*International Audiotext Network, Inc. v. Amer. Telephone and Telegraph*, 62 F.3d 69 (2d Cir.
1995) ....................................................................................................................................... 5

*Isaac v. City of New York*, 16-cv-4729 (KAM), 2018 WL 5020173, 2018 U.S. Dist. LEXIS
132995 (E.D.N.Y. August 6, 2018) ......................................................................... 17, 18, 19

*Johnson v. City of New York*, 699 F. Supp. 2d 444 (S.D.N.Y. 2009)......................................... 4

*Katz v. Klehammer*, 902 F.2d 204 (2d Cir. 1990)..................................................................... 6

*Kotler v. Boley*, 2022 WL 459678, 2022 U.S. App. LEXIS 27411 (2d Cir. Sep. 30, 2022, No.
21-1630)......................................................................................................................... passim

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)..................................................... 16

*Lockett v. City of Middletown*, 19-cv-08255 (PMH), 2021 WL 1092357, 2021 U.S. Dist.
LEXIS 53495 (S.D.N.Y. March 22, 2021) ............................................................................. 8

*Magnum v. City of New York*, 15-cv-8810 (PAE), 2016 WL 4619104, 2016 U.S. Dist. LEXIS
119213 (S.D.N.Y. September 2, 2016)................................................................................... 16

*Mateo v. Gundrum*, 9:10-cv-1103 (GLS/GHL), 2011 WL 5325790, 2011 U.S. Dist. LEXIS
127981 (N.D.N.Y. Aug. 30, 2011) ....................................................................................... 14

*McCray v. Caparco,* 761 Fed. Appx. 27 (2d Cir. 2019)............................................................ 20

iv

*Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) ............................ 7

*Moore v. City of Norwalk*, 17-cv-695 (JAM), 2018 WL 4568409, 2018 U.S. Dist. LEXIS

    162782 (D. Conn. September 24, 2018) ............................................................... 10

*Nunez v. Goord*, 172 F. Supp. 2d 417 (S.D.N.Y. 2001) ................................................. 14

*O'Neal v. City of New York*, 196 F. Supp. 3d 421 (S.D.N.Y. 2016) ........................................ 9, 20

*Okongwu v. County of Erie*, 21-2601 (Con), 2022 WL 6585217, 2022 U.S. App. LEXIS

    28060 (2d Cir. Oct. 7, 2022) ......................................................................... 16

*Palm v. Brooks*, 22-cv-9729 (VB), 2024 WL 1908388, 2024 U.S. Dist. LEXIS 80508

    (S.D.N.Y. May 1, 2024) .............................................................................. 6

*Rivera v. Senkowski*, 62 F.3d 80 (2d Cir. 1995) ........................................................ 14

*Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008) ................................................... 7

*Ross v. Correct Care Solutions LLC*, 11-cv-8542, 2013 WL 5018838, 2013 U.S. Dist. LEXIS

    (S.D.N.Y. Sep. 13, 2013) ............................................................................ 18

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) ........................................................ 5

*San Leandro Emergency Med. Plan v. Philip Morris*, 75 F.3d 801 (2d Cir. 1996) ................... 2, 5

*Santiago v. Westchester County*, 13-cv-1886, 2014 WL 2048201, 2014 U.S. Dist. LEXIS

    68799 (S.D.N.Y. May 19, 2014) ..................................................................... 18

*Scalpi v. Town of E. Fishkill*, 14-cv-2126 (KMK), 2016 U.S. Dist. LEXIS 24521 (S.D.N.Y.

    February 29, 2016) ................................................................................... 4

*Smith v. Collins*, 15-cv-216 (PAE), 2016 WL 438961, 2016 U.S. Dist. LEXIS 23710

    (S.D.N.Y. February 26, 2016) ...................................................................... 10

*Spavone v. N.Y.S. Dep't of Corr. Servs.*, 719 F.3d 127 (2d Cir. 2013) ................................ 6

*Thomas v. Co. Westchester*, 215 F. Supp. 2d 329 (S.D.N.Y. 2002) ................................... 6

*Thomas v. DeCastro*, 14-cv-6409 (KMK), 2019 WL 1428365, 2019 U.S. Dist. LEXIS 55153

    (S.D.N.Y. Mar. 29, 2019) ................................................................................ 14

*Triano v. Town of Harrison*, 895 F. Supp. 2d 526 (S.D.N.Y. 2012) ............................................... 8

*Vincent v. Winski*, 14-cv-7744 (VSB), 2018 WL 1441370, 2018 U.S. Dist. LEXIS 47537

    (S.D.N.Y. Mar. 22, 2018) ................................................................................ 19

*Walker v. City of New York*, 12-cv-5902, 2014 WL 12652345, 2014 U.S. Dist. LEXIS 42272

    (S.D.N.Y. March 18, 2014)............................................................................... 18

*Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120 (2d Cir. 2011) ................................................. 2

*Wray v. City of New York,* 490 F.3d 189 (2d Cir. 2009)................................................................. 8

*Zherka v. Amicone*, 634 F.3d 642 (2d Cir. 2011) ................................................................. 15, 16

**Statutes**

42 U.S.C. § 1983 ......................................................................................................... 5

**Rules**

F.R.C.P. 12........................................................................................................... 1, 4, 5

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of Defendants Westchester County (the "County"), Captain George Hermans ("Hermans"), and Captain Sullahuddeen Azim ("Azim"), (hereinafter collectively referred to as "County Defendants"), in support of the instant motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), to dismiss the Complaint of Plaintiff Jianqiao Lu ("Plaintiff") with prejudice. The Complaint is attached as *Exhibit A* to the Declaration of Robert Taglia, dated June 10, 2024 (hereinafter referred to as "Taglia Dec.").[1]

Plaintiff is currently a pre-trial detainee in the custody of the Westchester County Department of Corrections ("WCDOC") (WCDOC #265008). Plaintiff initiated the instant proceeding by filing the Complaint on February 12, 2024. The Complaint names the County, Hermans, and Azim. The Complaint alleges two causes of action: 1) a § 1983 claim for First Amendment retaliation; and 2) a claim of *Monell* liability against the County. In alleging his First Amendment retaliation claim, Plaintiff identifies numerous allegedly adverse actions taken by County Defendants. However, many of these alleged actions do not qualify as adverse actions for First Amendment retaliation purposes. Furthermore, Plaintiff fails to causally connect the allegedly adverse actions to his alleged protected activity. Additionally, the allegations supporting Plaintiff's cause of action for *Monell* liability are vague and conclusory.

---

[1] All Exhibits referenced in this Memorandum of Law are attached to the Taglia Dec.

## FACTS ALLEGED IN THE COMPLAINT[2]

At all times relevant, Plaintiff was and is a pre-trial detainee in the custody of WCDOC. *See*, Complaint, ¶2. In September of 2023, Plaintiff was employed as an inmate worker within WCDOC's jail, holding positions on "the Paint Crew, the Captain's Crew…, the Sanitation Detail…, and the 3-Core Law Library." *Id*. at ¶¶9-10. In at least one of these positions (the "Captain's Crew"), Plaintiff worked in sensitive areas and had access to potential contraband. As such, and pursuant to WCDOC policy, on September 18, 2023, a WCDOC Officer conducted a search of Plaintiff's person. *Id*. at ¶12. On or about September 19, 2023, Plaintiff filed an inmate grievance challenging the search of his person. *Id*. at ¶13.

Plaintiff's grievance was denied. *Id*. at n5. He alleges that, following the first grievance, he filed two more inmate grievances on the issue, on September 20 and 21, 2023, respectively. *See*, Complaint, ¶¶13, 15. While WCDOC records show only one additional personal search related grievance (filed on September 21, 2024), the number of grievances and respective filing dates alleged in the Complaint will be assumed for the purpose of this motion only. This grievance is attached as *Exhibit B* to the Declaration of Robert Taglia ("Plaintiff's Grievance Number 23-0559").[3] In drafting Grievance Number 23-0559, Plaintiff acknowledged that he was provided an explanation as to why a search of his person was conducted:

> In denying Grievance #23-0546, Sgt. Nivar states that Officer Beltran acted
> on a direct order from Sgt. Mateo to initiate strip searches on Captain's Crew

---

[2] The facts alleged in the Complaint are accepted as true, only for the purposes of the instant motion. *See*, *Wilson v. Merrill Lynch & Co., Inc*., 671 F.3d 120, 128 (2d Cir. 2011), *citing Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

[3] Grievance #23-0559 is incorporated by reference into the Complaint as the "Third Grievance," and subsequently quoted in part. *See*, Complaint, ¶15, 16; *see also San Leandro Emergency Med. Plan v. Philip Morris*, 75 F.3d 801, 808-09 (2d Cir. 1996) (holding that a court may consider, on a Rule 12(b)(6) motion, the "full contents" of documents deemed integral to a complaint even when the complaint contains only "limited quotation" of said document)

trustees, because they 'enter and move about the Jail Tac Room,' and have access to contraband such as 'pens' and 'highlighters'. *See*, Exhibit B

On September 22, 2023, WCDOC conducted a search of Plaintiff's cell. *See*, Complaint, ¶17. Illicit contraband was found and Plaintiff was promptly given a misbehavior report charging him with 1) Disorderly Conduct; and 2) Possession of Any Contraband. *Id*. at ¶¶21-22. The specific contraband found included office supplies and stationary items. *Id*. Notably, this is exactly the type of contraband the strip searches aimed to uncover. *See*, Exhibit B.

Plaintiff alleges, upon information and belief, that Hermans ordered the cell search and "ordered his subordinates to fabricate the charges and to create the misbehavior report." *See*, Complaint, ¶¶18, 26. However, when appearing before Azim for the resulting disciplinary hearing on September 26, 2023, Plaintiff admitted to possession of contraband. *Id*. at ¶¶29-30. Consequently, he was found guilty at hearing. *Id*. He was sentenced to 20 days in punitive confinement, relieved of his duties as an inmate worker, and, because he was, at the time, residing in a housing unit reserved for inmate workers (Unit 4NW), transferred to another housing unit. *Id*. at ¶¶9, 31. Plaintiff alleges that, as a result of this discipline, "the number of inmate grievances originating from 4NW sharply decreased," he became apprehensive about filing inmate grievances, and he has suffered profound emotional distress. *Id*. at ¶¶33-35. He also alleges that Hermans "embarked on a weeks-long smear campaign" to destroy Plaintiff's reputation. *Id*. at ¶28.

Finally, Plaintiff makes several allegations related to his claim of *Monell* liability. Specifically, Plaintiff alleges 1) Westchester County has a longstanding policy and widespread practice of failing to adequately train and supervise WCDOC employees on not retaliating against grievance filers and failing to discipline employees who knowingly violate inmates' constitutional rights; 2) the County is on actual or constructive notice that WCDOC staff routinely retaliates

against grievance filers; and 3) County policymakers acted with deliberate indifference to his constitutional rights. *Id.* at ¶¶53, 54, 66-68.

## LEGAL STANDARDS

### 12(B)(6) MOTION

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown [] that the pleader is entitled to relief." *Ashcroft*, *supra* at 679 (citations and quotation marks omitted).

While *pro se* complaints should be construed liberally, "[e]ven in a *pro se* case… threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts may not "invent factual allegations [plaintiff] has not pled." *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted). A *pro se* plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *See Johnson v. City of New York*, 699 F. Supp. 2d 444, 448 (S.D.N.Y. 2009) (citation and internal quotations omitted). Additionally, as here, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Scalpi v. Town of E. Fishkill*, 14-cv-2126 (KMK), 2016 U.S. Dist. LEXIS 24521, at *9 (S.D.N.Y. February 29, 2016) (citations and internal quotation marks omitted); *see also France v. County of Westchester*, 12-cv-5576 (KMK), 2016 U.S. Dist. LEXIS 44287, at *11-12 (S.D.N.Y. March 30, 2016) (citations and internal quotation marks omitted).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), in addition to the complaint, the Court may consider "any statements or documents incorporated in it by reference, as well as

matters of which judicial notice may be taken." *See*, *Hutchins v. Solomon*, 16-cv-10029 (KMK), 2018 WL 4757970, 2018 U.S. Dist. LEXIS 169421, at *17-18 (S.D.N.Y. September 29, 2018) (internal quotations and citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002) (holding that extraneous material is not "outside the pleadings" when the material is integral to complaint and relied upon by the plaintiff in framing the complaint).

This standard can be met even when a plaintiff does not attach a document and does not quote it in full. *See San Leandro Emergency Med. Plan v. Philip Morris*, 75 F.3d 801, 808-09 (2d Cir. 1996) (holding that a court may consider, on a Rule 12(b)(6) motion, the "full contents" of documents deemed integral to a complaint even when the complaint contains only "limited quotation" of said document); *International Audiotext Network, Inc. v. Amer. Telephone and Telegraph*, 62 F.3d 69, 71-72 (2d Cir. 1995) (holding that a court may consider, on a Rule 12(b)(6) motion, a document integral to the complaint, even if plaintiff chose not to attach it or incorporate it by reference, without converting the motion to one for summary judgment).

A key concern to the consideration of extrinsic documents on Rule 12(b)(6) motions is whether plaintiff possessed and/or knew about the document and should have expected it. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (In deciding a motion to dismiss under FRCP 12(b)(6), the court may consider "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.").

## SECTION 1983 CLAIM

Section 1983 empowers citizens to sue state actors and municipalities for depriving them of "rights, privileges, or immunities secured by the constitutions and laws [of the United States]." Section 1983 does not create new rights, but instead provides a mechanism for the redress of violations of rights created elsewhere including claims based upon a state actor's violation of

constitutional and/or federal statutory rights. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432 (1985); *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 105, 110 S. Ct. 444, 448 (1989). Thus, in order to establish a claim under Section 1983, a plaintiff must demonstrate that he or she was deprived of a right secured by the Constitution or laws of the United States. *See Katz v. Klehammer*, 902 F.2d 204, 206 (2d Cir. 1990). "Deprivation of a constitutional right is the *sine qua non* of Section 1983; absent such a violation, no claim – either against an individual or against a municipality under the Monell doctrine – will lie." *Thomas v. Co. Westchester*, 215 F. Supp. 2d 329 (S.D.N.Y. 2002) (*emphasis added*). "To state a claim under Section 1983, a plaintiff must allege facts showing defendants' direct and personal involvement in an alleged constitutional deprivation." *Palm v. Brooks*, 22-cv-9729 (VB), 2024 WL 1908388, 2024 U.S. Dist. LEXIS 80508, at *8 (S.D.N.Y. May 1, 2024) (citing *Spavone v. N.Y.S. Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013)).

## FIRST AMENDMENT RETALIATION

"To establish a First Amendment retaliation claim, a prisoner must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Kotler v. Boley*, 2022 WL 459678, 2022 U.S. App. LEXIS 27411, at *2, (2d Cir. Sep. 30, 2022, No. 21-1630) (citing *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal citation and quotation marks omitted). "To establish an 'adverse action' in the prisoner context, the 'retaliatory conduct' must be such that it 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Kotler*, 2022 WL 459678 at *2 (citing *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)) (citation omitted).

"We approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Kotler*, 2022 WL 459678 at *2-3 (citing *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015)) (citation and internal quotation marks omitted). Plaintiff's claim must be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation and internal quotation marks omitted).

### *MONELL*

It is well-established that "to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove…that an official policy of the municipality caused the constitutional injury." *See Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *citing Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-91 (1978); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights"). Indeed, "[b]efore a municipality can be held liable under Section 1983, it must be shown to have been 'the moving force of the constitutional violation." *Carmichael v. City of New York*, 34 F. Supp. 3d 252, 262-63 (E.D.N.Y. 2014) (*quoting Monell*, *supra* at 690-691; *see also Cash v. County of Erie*, 654 F.3d 324, 431-32 (2d Cir. 2011) (equating "moving force" with "proximate cause"). "A municipality may not be found liable simply because one of its employees committed a tort." *Roe*, 542 F.3d at 36, *citing Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

Instead, "[t]o hold a [municipality] liable under Section 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (i) an official policy or custom that (ii) causes the plaintiff to be subjected to (iii) a denial of a constitutional right." *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir. 2009) (citations and internal quotation marks omitted)*; see also Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 531-522 (S.D.N.Y. 2012) (citations omitted).    In order to allege such a policy or custom:

> "[A] plaintiff may assert one of the following: (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees."

*Hanner v. Westchester Cty.*, 16-cv-7610 (VB), 2017 WL 6352261, 2017 U.S. Dist. LEXIS 203401, at *17-18 (S.D.N.Y. December 11, 2017) (citation and internal quotation marks omitted).    "Such a claim cannot lie in the absence of an underlying constitutional violation." *See*, *Lockett v. City of Middletown*, 19-cv-08255 (PMH), 2021 WL 1092357, 2021 U.S. Dist. LEXIS 53495, at *11 (S.D.N.Y. March 22, 2021), (*citing Galgano v. Cty. of Putnam*, 16-cv-3572 (KMK), 2020 WL 3618512 at 9, 2020 U.S. Dist. LEXIS 116682 at *9 (S.D.N.Y. July 2, 2020) (other citation omitted).

To prevail on a *Monell* claim, a plaintiff must also show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *See*, *Buari v. City of New York*,  530 F. Supp. 356, 398 (S.D.N.Y. 2021) (citations omitted).

There are a variety of ways to demonstrate custom or policy.  *Id*.    One way to show a policy or custom is if "an act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker…[but] is so widespread as to have the force of law." *Id. (internal*

*quotations and citations omitted*).  Under this category, "a policy maker indirectly cause[s] the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Id.*

Municipal policy may also be based upon a "showing of deliberate indifference."  *Id*. at 398-99.  The policy or custom requirement is only satisfied under this prong if the pattern is "sufficiently persistent or widespread as to acquire the force of law."  *Id*. at 399 (citations omitted). "The need to act must be so obvious and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Id.* (citation omitted).  In order for a municipality to be liable under the "deliberate indifference" standard, a plaintiff has to show each of the following: "defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiff's rights." *Id.* (citations omitted*).  See also O'Neal v. City of New York*, 196 F. Supp. 3d 421, 435 (S.D.N.Y. 2016).  Liability for deliberate indifference can be based on a failure to train, supervise or discipline theory.  *Buari*, *supra* at 399 (citation omitted).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," and such failure "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact."  *See*, *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal citations and quotations omitted).

A plaintiff must show that "the municipality failed to adequately supervise or discipline its employees (thereby implicitly encouraging or ratifying their unlawful conduct") under a failure to supervise or discipline theory."  *Buari*, *supra* at 400 (citation omitted).  This failure must amount

to "deliberate indifference" such that the "need for more or better supervision to protect against constitutional violations was obvious." *Id.* (citation omitted). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations, deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents. *Id.* (citation omitted).

"Boilerplate language without any detail or facts regarding the nature of any "suspect policies, practices, or procedures, much less how they cause the individual defendants to violate plaintiff's rights" are insufficient to state a plausible *Monell* claim. *See Moore v. City of Norwalk*, 17-cv-695 (JAM), 2018 WL 4568409, 2018 U.S. Dist. LEXIS 162782, at * 9-10 (D. Conn. September 24, 2018) *(citation omitted); see also Dixon v. City of New York*, 14-cv-4930 (PGG), 2017 U.S. Dist. LEXIS 119042, at * 8-9 (S.D.N.Y. July 27, 2017) (boilerplate and conclusory allegation insufficient to state a *Monell* claim). In the absence of any allegations concerning a custom or municipal policy that can be linked to Plaintiff's injury, there can be no *Monell* liability. *Id*. at 16; *see also Cruz v. Vill. Of Spring Valley*, 21-cv-2073 (KMK), 2022 WL 42847, 2022 U.S. Dist. LEXIS 24999, at *17 (S.D.N.Y. February 11, 2022).

When a plaintiff fails to allege specific factual allegations on a "failure to train" theory, the Court will dismiss that claim. *See Dava v. City of New York*, 15-cv 08575 (ALC), 2016 WL 4532203, 2016 U.S. Dist. LEXIS 115639, at *25-26 (S.D.N.Y. August 29, 2016) *(citation omitted); see also Corbett v. City of New York*, 15-cv-09214 (GHW), 2016 U.S. Dist. LEXIS 178037, at *10-11 (S.D.N.Y. December 22, 2016), *citing Smith v. Collins*, 15-cv-216 (PAE), 2016 WL 438961, 2016 U.S. Dist. LEXIS 23710 (S.D.N.Y. February 26, 2016) ("While it may be true that Section 1983 plaintiffs cannot be expected to know the details of a municipality's training

programs prior to discovery… this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim") (citation and internal quotations omitted).

Where, as here, Plaintiff asserts a "failure to supervise" claim, he must assert facts to support it showing that "the policymaking officials were deliberately indifferent" and that they had notice of a "potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious and that the policymaker's failure to investigate or rectify the situation evidences deliberate indifference rather than mere negligence or bureaucratic inactions." *See*, *Clancy v. Town of Southold*, 15-cv-7321 (DRH)(SIL), 2018 WL 4185706, 2018 U.S. Dist. LEXIS 149218, at *13-14 (E.D.N.Y. August 31, 2018) (citation and internal quotations omitted).

## **LEGAL ARGUMENT**

## **PLAINTIFF FAILS TO PLAUSIBLY ALLEGE FIRST AMENDMENT RETALIATION**

In alleging First Amendment retaliation, Plaintiff identifies seven allegedly adverse actions: 1) "the targeted shakedown" (a search of Plaintiff's cell); 2) "the fabricated misbehavior report;" 3) "the cell transfer;" 4) "the punitive confinement" (a 20-day confinement in "keeplock"); 5) "termination from job assignment;" 6) "defamation of character"; 7) a "ban on reemployment." *See*, Complaint, ¶63. Each of these allegedly adverse actions fails because it is not a legally sufficient adverse action for the purpose of First Amendment retaliation, is not properly alleged to be causally connected to an act allegedly protected by the First Amendment, and/or lacks the requisite allegation of personal involvement on the part of either named defendant.

### A. Cell Search/Misbehavior Report

Plaintiff alleges that he believes that Hermans ordered other WCDOC employees to search his cell and "fabricate" a misbehavior report in retaliation for his filing of inmate grievances.[4] *See*, Complaint, ¶¶18, 26. Neither of these conclusory allegations amounts to an adverse action for the purpose of First Amendment retaliation. The search of an inmate's cell does not constitute an adverse action. It is well settled that "an inmate has no constitutional right to be free from a search of his cell, even when that search is conducted for arbitrary or retaliatory motives." *Bey v. Eggleton*, 96-cv-3302 (DLC), 96-cv-4288 (DLC), 96-cv-4289 (DLC), 1998 WL 118158, 1998 U.S. Dist. LEXIS 3147 at *13-16 (S.D.N.Y. Mar. 16, 1998) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984)). Plaintiff will compare his case to that presented in *Kotler v. Boley*, 2022 WL 4589678, 2022 U.S. App. LEXIS 27411, (2d Cir Sep. 30, 2022, No. 21-1630), where a cell search was found to be one of a number of actions that, in whole, amounted to an adverse action. However, the two cases are easily distinguishable. In *Kotler*, the cell search was followed by "a false misbehavior report – based on contraband that allegedly would not have ordinarily resulted in discipline – and false testimony at the hearing," as well as "several months of disciplinary confinement." 2022 U.S. App. LEXIS 27411 at *4. Although Plaintiff makes the conclusory allegation that the misbehavior report issued to him following the search of his cell was "fabricated," he admitted to contraband charges at his hearing. *See*, Complaint, ¶¶26, 30; *see also Bey*, 1998 U.S. Dist. LEXIS 3147 at *10-11 (granting summary judgement on retaliation claim as to allegedly retaliatory misbehavior report where inmate did not dispute veracity of underlying charge).

Here, the Complaint is bereft of any allegation that the contraband he possessed would not have ordinarily resulted in discipline or that any false testimony was elicited at his hearing. Absent

---

[4] Plaintiff alleges no personal involvement of Azim as to these acts.

these allegations, *Kotler* is inapposite to the present case. Plaintiff admitted to contraband charges and was appropriately punished. In *Kotler*, the inmate faced excessive punishment for a charge of the kind that would not ordinarily be brought and which was based on false testimony. Viewed in the proper context, Plaintiff's piecemeal allegations of adverse acts do not represent a pattern of retaliation, but rather a list of consequences that appropriately followed an admitted contraband charge. The charge itself followed a cell search which was not an adverse act or otherwise a constitutional violation. Given the Second Circuit's skeptical approach to inmate retaliation claims, the allegations must be viewed in this light. *See Kotler*, 2022 U.S. App. LEXIS 27411 at *2-3 ("We approach prisoner retaliation claims with 'skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.") (citing *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015)).

### B.  Cell Transfer/Termination from Employment/Confinement

Plaintiff alleges that Azim, in retaliation for his filing inmate grievances, terminated his employment, transferred him to a different housing unit, and sentenced him to twenty (20) days in punitive confinement.[5] *See*, Complaint, ¶¶29, 31. Assuming, *arguendo*, that each of these qualifies as an adverse act for purpose of First Amendment retaliation, Plaintiff fails to allege a sufficient causal connection between these acts and the alleged protected activity. "In considering whether a causal connection exists, a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the

---

[5] As to termination and placement under confinement, Plaintiff alleges no personal involvement on the part Hermans. His allegations as to Hermans' involvement in the cell transfer are conflicting, with ¶27 alleging that Hermans transferred him to another unit upon suspending his employment but ¶31 implying that the transfer was part of the punishment given following the hearing held by Azim. *See*, Complaint, ¶27, 31.

inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." *Thomas v. DeCastro*, 14-cv-6409 (KMK), 2019 WL 1428365, 2019 U.S. Dist. LEXIS 55153, at *27 (S.D.N.Y. Mar. 29, 2019) (internal quotations and citations omitted).

Of these four elements, all Plaintiff has properly alleged is temporal proximity and a prior good disciplinary record, neither of which is sufficient, without more, to survive a motion to dismiss. *See Nunez v. Goord*, 172 F. Supp. 2d 417 (S.D.N.Y. 2001) ("Temporal evidence, alone, is insufficient to support a claim of retaliation.") (citing *Colon v. Coughlin*, 58 F.3d 865, 865 (2d Cir. 1995)). Importantly, Plaintiff has not and cannot allege that he was vindicated at hearing because he admitted to possessing contraband. This has often been found sufficient to defeat causation. *See Cole v. Fischer*, 416 F. App'x. 111, 113 (2d Cir. 2011)) (dismissing First Amendment retaliation claim where Plaintiff admitted misconduct at disciplinary hearing because adverse action was independently justified). This is sufficient to defeat causation even if Plaintiff met his initial burden as to causation by alleging only close temporal proximity and a prior good disciplinary record. *Mateo v. Gundrum*, 9:10-cv-1103 (GLS/GHL), 2011 WL 5325790, 2011 U.S. Dist. LEXIS 127981 at *1 (N.D.N.Y. Aug. 30, 2011) ("even where an inmate plaintiff meets his initial burden, a defendant is entitled to judgment if he or she can demonstrate that he or she would have taken the same action against the plaintiff absent any retaliatory motivation."). A proper motive on the part of County Defendants is not only demonstrated by Plaintiff's admission of guilt, it is presumed by law in the Second Circuit. *Rivera v. Senkowski*, 62 F.3d 80 (2d Cir. 1995)) (Noting "the presumption that a prison official's acts to maintain order are done for a proper purpose.").

14

The true chain of causation here is clear. Plaintiff's person was searched for possession of the contraband he had access to on his work detail. *See*, Exhibit B. Subsequently, a search was conducted of his cell which, as discussed above, is not an adverse act. even assuming, *arguendo*, it was causally linked to any protected activity. Illicit contraband was found it Plaintiff's cell. *See*, Complaint at ¶¶22, 30. Plaintiff admitted such at his disciplinary hearing. *Id*. at 30. This admission and subsequent finding of guilt was a proximate and but-for cause of the punishments that followed (termination, transfer, and confinement). Plaintiff will, again, compare his case to that presented in *Kotler*, where the Court found that the chain of causation from the protected act to the allegedly adverse action is not necessarily broken where an inmate admits his guilt at hearing. *See* 2022 U.S. App. LEXIS 27411 at *7. However, in rejecting defendant's contention that "causation cannot be inferred because there were non-retaliatory reasons for their actions: cells may be searched at random and [plaintiff] conceded that contraband was found in his cell," the Court explicitly referenced plaintiff's allegations that the contraband found in his cell would not have ordinarily resulted in discipline and that a corrections officer offered false testimony at his disciplinary hearing. Plaintiff makes no such allegation here. He cannot avoid the fact that the punishments he received were proximately caused by him being properly found guilty at hearing following his admission of guilt.

### C. Defamation

Defamation does not constitute an adverse action. Setting aside the fact that Plaintiff's allegation of defamation is limited to the single conclusory and non-specific allegation that Hermans "embarked on a weeks-long smear campaign," defamation is not a cognizable adverse action for First Amendment retaliation purposes. *See Zherka v. Amicone*, 634 F.3d 642, 646 (2d

Cir. 2011)) ("the presumed damages of defamation per se under New York law do not establish a concrete harm sufficient for a federal claim of First Amendment retaliation.").

### D. Employment Ban

Plaintiff's allegation that he was "banned" from employment is limited to one conclusory statement that identifies neither Hermans nor Azim nor any specific action taken by anyone. *Id*. at ¶ 36. As such, Plaintiff fails to allege personal involvement as to that allegedly adverse act. *See Ford v. Aramark*, 18-cv-2696 (NSR), 2020 WL 377882, 2020 U.S. Dist. LEXIS 13174 at *11 (S.D.N.Y. Jan. 23, 2020) (dismissing claim against prison official when complaint "lack[ed] any non-conclusory allegation" about that official's personal involvement in any constitutional violation).

### THE COMPLAINT FAILS TO STATE AN ACTIONABLE *MONELL* CLAIM

Plaintiff's *Monell* claim against the County is predicated upon the alleged First Amendment retaliation discussed above.  Because he fails to plausibly allege the underlying constitutional violation, there can be no *Monell* liability. *See Magnum v. City of New York*, 15-cv-8810 (PAE), 2016 WL 4619104, 2016 U.S. Dist. LEXIS 119213, at *19-20 (S.D.N.Y. September 2, 2016).  Furthermore, it fails regardless because it wholly relies on non-specific conclusory allegations. The complaint alleges no formal policy. It makes only conclusory allegations of a persistent widespread custom or practice and attempts to support them by pointing to three inapposite First Amendment retaliation cases spanning the last decade (two of which were settled over 9 years ago). *See* Complaint at ¶¶ 53-55, 67-68; *see also Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (a "general and conclusory allegation" of a municipal policy or custom fails to state a *Monell* claim.).

16

Plaintiff also makes a conclusory allegation that County policymakers were deliberately indifferent to his Constitutional rights, but does not identify a single alleged policymaker, never mind a single action taken by one. *See* Complaint at ¶¶ 60, 65; *Okongwu v. County of Erie*, 21-2601 (Con), 2022 WL 6585217, 2022 U.S. App. LEXIS 28060 (2d Cir. Oct. 7, 2022) (dismissing *Monell* claim where complaint "did not identify any decision by a municipal policymaker that could fairly be said to represent official policy.").

To the extent that Plaintiff's Complaint can be construed as alleging either a widespread custom and practice/"De Facto" theory or a failure to train/discipline theory, it does not state a plausible claim under either.

### A. Widespread Custom and Practice - De Facto Policy

To support this theory, a plaintiff must allege that he suffered a constitutional violation and that the violation was caused by a County custom or policy. *See*, *Isaac v. City of New York*, 16-cv-4729 (KAM), 2018 WL 5020173, 2018 U.S. Dist. LEXIS 132995, at *50 (E.D.N.Y. August 6, 2018). The mere assertion that the County has such a policy without specifics is insufficient. Rather, a plaintiff alleging such a violation must demonstrate such a custom or *de facto* policy through a widespread practice and show that "the policymaker was aware of a subordinate's unconstitutional actions and consciously chose to ignore them, effectively ratifying the actions." *See*, *Buari*, *supra* at 398 (*citation omitted*).

Here, Plaintiff alleges that: 1) the County, through "inaction," "effectively condones, ratifies, and sanctions…" the kind of misconduct alleged in this case (First Amendment retaliation); and 2) this enables "WDOC personnel to deliberately, recklessly, and repeatedly retaliate against grievance filers without consequence". *See* Complaint at ¶¶59, 67. This boilerplate allegation is insufficient to sustain a *Monell* claim. *See*, *Buari*, *supra* at 398 (*citation omitted*).

As in *Isaac*, *supra,* although Plaintiff lists four (4) cases over the last ten (10) years to support such a "*de facto*" policy, they do not support a policy or custom as the claims in each are factually dissimilar to Plaintiff's claims, none resulted in a finding of liability against the County of WCDOC, and they are too few and far between to constitute a widespread and/or persistent practice. *See*, *Isaac*, *supra* at 50-51; *see also*, *Falls v.Campbell*, 17-cv-35 (KMK), 2019 WL 1255768, 2019 U.S. Dist. LEXIS 45090, at *19-20 (S.D.N.Y. March 19, 2019), *citing Walker v. City of New York*, 12-cv-5902, 2014 WL 12652345, 2014 U.S. Dist. LEXIS 42272 (S.D.N.Y. March 18, 2014) ("finding that a plaintiff's reliance on ten prior lawsuits, none resulting in an adjudication of liability over the span of approximately ten years hardly suggests the frequency or pervasiveness of the purported custom that is required to state a Monell claim") (quotations omitted).

The First Amendment retaliation claim in *Ross v. Correct Care Solutions LLC*, 11-cv-8542, 2013 WL 5018838, 2013 U.S. Dist. LEXIS (S.D.N.Y. Sep. 13, 2013), based on events which occurred over thirteen (13) years ago, related to the failure to provide medical care. It never resulted in a finding of liability.

The First Amendment retaliation claim in *Santiago v. Westchester County*, 13-cv-1886, 2014 WL 2048201, 2014 U.S. Dist. LEXIS 68799 (S.D.N.Y. May 19, 2014) was based on events that occurred over ten (10) years ago and never resulted in a finding of liability. Plaintiff does not point to a single case, allegation, or incident that took place between the 2013 events alleged in *Santiago* and the late-2017/2018 events alleged in *Gomez* to support his theory of a widespread and persistent practice.

In *Gomez v. Westchester County*, 18-cv-00244 (NSR), 2021 WL 4443379, 2021 U.S. Dist. LEXIS 185670, (S.D.N.Y. Sep. 28, 2021) plaintiff failed to state a cause of action as to any First

Amendment retaliation claim based on the filing of grievances. *See Gomez*, 2021 U.S. Dist. LEXIS 185670 at *43-46. The *Monell* claim within was dismissed and that case, as well as *George v. County of Westchester*, never resulted in a finding of liability. *See Gomez*, 2021 U.S. Dist. LEXIS 18567024 at 24; *George v. County of Westchester*, 20-cv-1723 (KMK), 2021 WL 4392485, 2021 U.S. Dist. LEXIS 183336 (S.D.N.Y. Sep. 24, 2021); *see also Vincent v. Winski*, 14-cv-7744 (VSB), 2018 WL 1441370, 2018 U.S. Dist. LEXIS 47537, at *17 (S.D.N.Y. Mar. 22, 2018) (granting motion to dismiss Monell claims where "the only facts that Plaintiff identifie[d] in support of any pattern of mishandling situations because of a failure to train . . . consist[ed] of other litigations resulting in settlements").

Plaintiff's reliance on the 2009 DOJ report is similarly unavailing. *See* Complaint at ¶¶56-58. "Research reports may be used to bolster Monell claims, but only if those reports are sufficiently connected to the specific facts of the case and are of relatively recent vintage." *Isaac v. City of N.Y.*, 16-cv-4729 (KAM), 2018 WL 5020173, 2018 U.S. Dist. LEXIS 132995 (E.D.N.Y. Aug. 6, 2018) (citing *Gomez v. City of New York*, 16-cv-1274 (NGG) (LB), 2017 WL 1034690, 2017 U.S. Dist. LEXIS 38100 (E.D.N.Y. Mar. 16, 2017)).

### B. Failure to Train/Discipline

In limited situations, a municipality's decision not to train its employees about their legal duty not to violate the constitutional rights of citizens may rise to the "level of an official governmental policy for purposes of Section 1983." *See*, *D'Alessandro v. City of New York*, 13-cv-930 (SLT), 2016 WL 6962516, 2016 U.S. Dist. LEXIS 16316, at *27 (E.D.N.Y. November 28, 2016) (*internal quotations omitted*).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," and such failure "must amount to deliberate indifference to the rights

of persons with whom the untrained employees come into contact."  *See*, *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (*internal citations and quotations omitted*).

Additionally, plaintiff must establish that the failure to provide particular training was the actual cause of constitutional violation alleged. *Id.* at 59 n.5.  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *See*, *McCray v. Caparco,* 761 Fed. Appx. 27, 31-32 (2d Cir. 2019) (*citation omitted*); *see also O'Neal v. City of New York*, 196 F. Supp. 3d 421, 435 (S.D.N.Y. 2016) (pleading standard for a *Monell* failure to train claim), *aff'd. on other grounds*, 679 Fed. Appx. 16 (2017), *cert den*. 138 S. Ct. 559 (2017).

As set forth above, of the four (4) cases cited by Plaintiff over a ten (10) year period, none resulted in liability against any municipal actor.  Those four (4) cases could not have put the County on notice that the WCDOC's training on First Amendment protections was inadequate.  *See*, *Connick*, supra at 63; *see also Gomez*, 2021 US Dist. LEXIS 18567024 at 22-24 (dismissing *Monell* claim where plaintiff failed to allege any deficiency as to WCDOC's training policies).

Likewise, Plaintiff has failed to allege a *Monell* claim for failure to discipline/supervise. In order to plausibly allege this type of *Monell* claim, a plaintiff must show that "the municipality failed to adequately supervise or discipline its employees (thereby implicitly encouraging or ratifying their unlawful conduct) …[and] that such a failure of supervision or discipline was tantamount to deliberate indifference." *Buari*, *supra* at 68 *(citation omitted)*.  The need for more or better supervision must be obvious.  *Id*.  An "obvious need may be demonstrated by repeated complaints of civil rights violations, deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall

20

further incidents." *Id. (citation omitted).*  To the extent that Plaintiff's complaint is construed as alleging this type of claim, it is conclusory and without any merit whatsoever.

## **CONCLUSION**

Based upon the foregoing, County Defendants respectfully requests that the instant motion be granted in its entirety, that the Complaint be dismissed with prejudice as to County Defendants pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, and for such other and further relief as this Court may deem just and proper.

Dated: White Plains, New York
      June 10, 2024

                           JOHN M. NONNA
                           Westchester County Attorney
                           Attorney for County Defendant

                           BY: *Robert Taglia*
                           Robert Taglia
                           Assistant County Attorney
                           Of Counsel, 600 Michaelian Office Building
                           148 Martine Avenue, Room 600
                           White Plains, New York 10601
                           rbta@westchestercountyny.gov
                           (914) 995-5103

To:   **Jianqiao Lu**
      *Pro se* Plaintiff
      WCDOC
      PO Box 10
      Valhalla, NY 10595-0010