USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/7/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JIANQIAO LU,

                Plaintiff,

-against-

GEORGE HERMANS,
SULAHUDDEEN AZIM &
WESTCHESTER COUNTY,

                Defendants.

No. 24-cv-01023 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge,

    Plaintiff Jianqiao Lu ("Plaintiff"), proceeding *pro se* commenced the instant action on or about February 12, 2024, asserting claims pursuant to 42 USC 1983 ("Section 1983") sounding in alleged retaliation against Defendants Captain George Hermans ("Captain Hermans") and Captain Sulahuddeen Azim ("Captain Azim") of the Westchester County Dept. of Corrections ("WCDC") and Westchester County (the "County") (collectively referred to as the "Defendants"). Presently before the Court is the Defendants' motion pursuant to Fed. Rule Civ. Proc. Law § 12(b)(6) ("Rule 12(b)(6)") seeking to dismiss Plaintiff's Complaint. For the following reasons, the motion is GRANTED.

## BACKGROUND

    Plaintiff is a pre-trial detainee currently housed at the WCDC following his arraignment on criminal charges in New York State Supreme Court, Westchester County. On or about February 12, 2024, Plaintiff filed the action. (ECF No. 1.) On July 16, 2024, Defendants filed their motion to dismiss and supporting papers. (ECF No. 22 – 24.) Plaintiff filed is opposition to

the motion on June 12, 2024.[1] (ECF No. 18) Defendants did not file reply papers.

## THE COMPLAINT

The allegations in the complaint are deemed true and liberally construed for the purpose of resolving Defendants motion to dismiss.

Since October 25, 2021, Plaintiff has been a detainee at WCDC awaiting trial in New York State Supreme Court on gun possession charges. Shortly thereafter his detention, Plaintiff applied and was approved for employment within WCDC as a "trustee," an inmate worker. As a trustee, Plaintiff was moved to housing unit 4NW, which is located in the newest housing unit and reserved for trustees. Unit 4NW is colloquially referred to as the jail "penthouse" for its relatively comfortable conditions of confinement.

By September 23, 2023, Plaintiff was employed as a trustee in the Paint Crew, the Captain's Crew (the 11PM-7AM shift), the Sanitation Detail (the 3PM-11PM shift), and the 3-Core Law Library. The three jobs combined generated a weekly pay of $195.00. As a trustee, Plaintiff was also given access to meals and beverages which are not available to the general inmate population. Plaintiff valued these perks at approximately $140.00 a week.

On the night of September 18, 2023, while performing his duties as part of the Captain's Crew, Plaintiff was targeted for a strip search by Correctional Officer ("CO") C.B. CO C.B. informed Plaintiff that he was directed to strip search him on a daily basis "per departmental policy and procedure." A copy of the policy was not presented to Plaintiff. The search resulted

---

[1] Plaintiff requested that his letter dated April 22, 2024, be deemed his opposition to the Defendants' motion to dismiss. (ECF No. 22.)

in negative findings. Previously, Plaintiff had never been subjected to a strip search.

On September 19, 2023, following the initial search, Plaintiff filed a grievance (the "First Grievance"), challenging the propriety of the strip search. That same night, Plaintiff was strip searched again without reasonable suspicion. The next day, Plaintiff filed a second grievance (the "Second Grievance"). On September 20, 2023, Plaintiff was once again strip searched at night. The following day, Plaintiff filed his third grievance (the "Third Grievance") to Captain Hermans concerning the strip searches.

On the morning of September 22, 2023, Plaintiff was awakened by several correctional officers who removed him from my cell while other officers conducted a search of his cell. The cell was left in state of disarray and several family photos were damaged. On information and belief, Captain Hermans, as Shift Commander, ordered the search of Plaintiff's cell. Soon thereafter, Sergeant S.B. arrived at Plaintiff's cell and returned the "Third Grievance" to Plaintiff informing him that Captain Hermans would not accept it because the form was not properly prepared. Plaintiff made the necessary corrections and resubmitted the form to Sergeant S.B. Immediately thereafter, Plaintiff was served with a misbehavior report charging him with disorderly conduct and possession of contraband.[2]

Plaintiff asserts upon information and belief, that Captain Hermans ordered his subordinates to fabricate the contraband charges and to fabricate the misbehavior report. Following the receipt of the misbehavior report, Plaintiff was suspended from his work assignments, removed from 4NWhousing unit, and transferred to the general population housing

---

[2] Plaintiff was purportedly charged with possession of pens, highlighters, and a paper clip which were discovered during the cell search. The report also claimed that Plaintiff was in possession of a Thanksgiving-themed sticker sheet which tested positive for a contraband substance.

area. For approximately a week, Plaintiff alleges that Captain Hermans embarked on a smear campaign to destroy Plaintiff's reputation which included false claims that Plaintiff possessed drugs.

On September 26, 2023, Plaintiff appeared before Captain Azim, then WCDC's Disciplinary Hearing Officer, for an administrative hearing to address the multiple disciplinary charges levied against him. At the hearing, Captain Azim, sustained all the charges, including possession of the contraband, and sentenced Plaintiff to 20 days of punitive confinement ("keeplock"). Plaintiff did not appeal Captain Azim's findings for fear of future retribution. Plaintiff further asserts that Captain Azim was incentivized to prevent meritorious inmate complaints from reaching the New York State Commission of Correction ("NYSCOC") and to present a rosy image of WCDC.

## RELEVANT LAW

**Rule 12(B)(6)**

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); accord *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court

is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"Where, as here, a plaintiff proceeds *pro se*, the court must 'construe [ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s].'" *Askew v. Lindsey*, No. 15-CV-7496 (KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (citing *Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "the liberal treatment afforded to *pro se* litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)) (internal quotation marks omitted).

When determining a Rule 12(b)(6) motion, courts are generally confined to the "four corners of a complaint." *Perez v. Westchester Foreign Autos, Inc.*, No. 11-CV-6091, 2013 WL 749497, at *5 (S.D.N.Y. Feb. 28, 2013) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). As part of its review, courts are also entitled to consider documents attached to the complaint or incorporated in it by reference—i.e., documents "integral" to the complaint and that the complaint relied upon in bringing the suit. See *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000)).

**Section 1983**

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); see *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

*First Amendment Retaliation*

In count one (1) of the Complaint, Plaintiff asserts a claim for First Amendment retaliation against Defendants Captain Hermans and Captain Azim. Courts generally approach prisoner retaliation claims "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992 (2002). See also *Phelps v. Kapnolas*,

308 F.3d 180, 187 n. 6 (2d Cir.2002). In order to survive a Rule 12(b)(6), a plaintiff asserting a First Amendment retaliation claim must allege the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes*, 239 F.3d at 492. Much like all other civil claims brought in federal court, a plaintiff asserting a retaliation claim must comply with the requirements of Rule 12(b)(6).

Upon a review of the Complaint, liberally construing the allegations, and giving them every favorable inference, it is the Court's determination that Plaintiff has failed to assert a plausible claim on multiple grounds. The First Amendment retaliation claims are generally deemed dismissed without prejudice, except as to those claims premised on alleged impermissible searches, fabricated misbehavior report for possession of contraband and defamation, which are all dismissed with prejudice.

First and foremost, Plaintiff's relies almost exclusively on conclusory statements and legal conclusions lacking in factual support. The Complaint contains statements such as "on information and belief" Captain Hermans ordered that Plaintiff's cell be searched, "on information and belief" Captain Hermans ordered his subordinates to fabricate the contraband and to create a misbehavior report, "Captain Azim was predisposed to retaliating against grievance filers due to his [alleged] conflicting responsibilities," "Captain Azim was incentivized to prevent meritorious inmate complaints from reaching NYSCOC and Captain Azim's competing interest resulted in a vicious cycle of retaliation the discouraged WCDC residents from exercising their First Amendment." (Compl. paras. 18, 21, 44–45). Plaintiff's allegations amount to nothing more than conjecture.

As previously referenced, in order to assert a plausible First Amendment retaliation claim, a Plaintiff must allege, *inter alia*, an adverse action. *Dawes*, 239 F.3d at 492. An "[a]dverse action," defined objectively, is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir.2004) (quoting *Davis*, 320 F.3d at 353). "[I]n the context of prisoner retaliation suits, a prisoner need not demonstrate 'actual chill.' The issue is whether defendants engaged in retaliatory conduct that would 'deter a similarly situated individual of ordinary firmness from exercising his constitutional rights.'" *Lashley v. Wakefield,* 483 F.Supp.2d 297, 300 (W.D.N.Y.2007) (quoting *Gill*, 389 F.3d at 381).

Here, Plaintiff alleges that after filing each grievance, the Defendants conducted additional strip and cell searches, filed false misconduct charges against him, stripped him of his trustee designation (in turn depriving him of trustee benefits such as preferrable housing and a salary), defamed him and banned him from serving as a trustee in the future.

It is well settled that an inmate has no reasonable expectation of privacy in his prison cell entitling him to protection of unreasonable searches as prohibited under the Fourth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194 (1984). To provide an inmate such a right is "fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. *Id.* at 527. Random searches of inmates, whether individually or collectively, as well as their cells and lockers are valid and necessary to ensure the safety and security of a prison and those within their walls. *Id.* at 529. An inmate or detainee does have recourse, however, for what may be acts of "calculated harassment" unrelated to institutional prison needs and may seek redress under the protections of the Eighth Amendment cruel and unusual punishments standard. *Id.* at 530. Accordingly,

Plaintiff's retaliation claims premised on alleged impermissible searches must be dismissed with prejudice without leave to replead in the future.

Following the search of Plaintiff's cell, WCDC personnel discovered contraband. Plaintiff alleges that the discovery was fabricated resulting in what amounts to trumped up charges. In his Complaint, however, Plaintiff freely admits to the possessing the impermissible material (contraband) which resulted in a 20-day period of confinement. It stands to reason that when an inmate freely admits to or fails to challenge the veracity of allegations contained in a misbehavior reports, and is afforded a hearing and an appeal process, such misbehavior can no longer serve as a basis for a retaliatory claim. See *Bey v. Eggleton,* No. 96 CIV. 3302 (DLC), 1998 WL 118158, at *5 (S.D.N.Y. Mar. 17, 1998) (dismissal of plaintiff's retaliation claim on summary judgment was warranted where inmate did not challenge the underline misbehavior charges). Accordingly, Plaintiff's claim premised alleged fabricated misbehavior report regarding the impermissible possession of contraband is deemed dismissed with prejudice.

Lastly, Plaintiff's retaliation claim premised on defamation similarly fails. Plaintiff alleges that following the discovery of the contraband, "Captain Hermans embarked on a week-long smear campaign…he falsely…reported [Plaintiff] possessed drugs. (Compl. para. 29.) Absent more, the mere allegation of *per se* defamation is insufficient to support a plausible claim of retaliation. Moreover, Plaintiff admitted to the possession. Accordingly, Plaintiff's retaliation claim premised on defamation is deemed dismissed with prejudice.

***Monell* Liability**

Plaintiff attempts to assert a *Monell* claim against Westchester County for alleged

retaliatory conduct for availing himself of the grievance procedure at the WCDC.[3] After liberally interpreting the Complaint and according *pro se* plaintiff every favorable inference, the Court finds that Plaintiff has failed to plead a plausible claim. Accordingly, Plaintiff's claim asserted against Westchester County is dismissed without prejudice.

A municipality, like Defendant, may be sued under Section 1983 only "when execution of [the] government's policy or custom ... inflicts the injury." *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Such a claim is commonly referred to as a *Monell* claim. A plaintiff asserting a *Monell* claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). Courts in this Circuit generally apply a two-prong test for Section 1983 claims brought against a municipal entity. *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused [the plaintiff's] injuries beyond merely employing the misbehaving officer." *Id.* (internal citation omitted). Second, the plaintiff must establish a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

For an unofficial policy or custom to invite *Monell* liability, the practice, custom or usage must be so widespread and so persistent that it has the force of law. See *Lauro v. City of New York*, 39 F. Supp. 2d 351, 366 (S.D.N.Y. 1999), rev'd on other grounds, 219 F.3d 202 (2d Cir. 2000). A plaintiff may plausibly satisfy the "policy or custom" requirement by alleging:

---

[3] Plaintiff alleges that employees of the WCDC retaliated against him for filing a grievance on September 21, 2023.

    (1) a formal policy officially endorsed by the municipality;
    (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question;
    (2) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or
    (3) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

See *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations omitted).

To overcome a motion to dismiss, a complaint must include more than broad or vague allegations to support a *Monell* claim. "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993); see also *Davis v. City of New York*, No. 07-CV-1395(RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) (holding that "conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations). Similarly, it is not enough to allege simply that a municipal policy or custom exists. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). Notably, a municipality may not be held liable under Section 1983 on a *respondeat superior* theory solely because the municipality employs an individual who violated the law. *Monell*, 436 U.S. at 692.

Here, other than general conclusory statements, Plaintiff offers no factual allegations suggesting the plausible existence of a policy or custom which contributed to the alleged misconduct. While Plaintiff references four prior lawsuits commenced by inmates and/or detainees against Westchester County and WCDC for the purpose of attempting to establish a pattern or history of similar impermissible conduct (i.e. a practice or custom), such effort fails.

11

In *Ross v. Correct Care Solutions LLC*, No. 11-CV-8542(DLC), the plaintiff asserted, *inter alia*, claims for inadequate medical and dental care, and First Amendment retaliation. The action was settled with no admission of wrongdoing. In *Santiago v. Westchester County*, 13-cv-0188 (LGS), the plaintiff asserted, *inter alia*, claims for failure to supervise, use of excessive force and the denial of access to the grievance procedure. No claim of retaliatory misconduct was asserted. While the case settled, there is no indication of an admission of misconduct or liability on the part of the County.

In *Gomez v. Westchester County*, 18-cv-00244 (NSR), the plaintiff alleged, *inter alia*, that he was denied the right to freely exercise his religion. More specifically, the plaintiff alleged that he was depraved of special dietary foods based on his religious observances. By order dated November 28, 2023, the action was dismissed for failure to prosecute. In *George v. Westchester County*, 20-cv-1723 (KMK) the plaintiff asserted, *inter alia*, due process claims concerning alleged false misbehavior reports, the impartiality of the disciplinary hearings and the hearing officer. Much like the previously mentioned matter, by order dated October 3, 2023, the action was dismissed for failure to prosecute.

Individually and collectively the referenced cases are insufficient to support a finding of an official or unofficial policy, custom or practice. The mere assertion of prior unsupported claims of similar misconduct are insufficient to establish a custom, practice or an unofficial policy. Plaintiff's assertions "only points to the alleged constitutional deprivations that he [purportedly] suffered," which is insufficient. *See Kiss v. Torres*, No. 21-CV-10391 (KMK), 2024 WL 1210941, at *23 (S.D.N.Y. Mar. 19, 2024)

Likewise, Plaintiff's reliance on a November 19, 2009 investigative report authored by

12

the United States Attorney's Office, Civil Rights Division is unavailing. While the report found, *inter alia*, that WCDC engaged in a pattern of failing to adequately protect detainees and inmates from harm and serious risk of harm from staff, provided inadequate medical and mental health care, and failed to maintain an adequate grievance procedure, the findings were based on a review of WCDC procedures then in place, and incident reports from 2006 and 2007. Plaintiff's reliance on alleged similar and/or dissimilar incidents that purportedly took place close to two decades ago are insufficient to support a finding of a pattern or practice of misconduct in 2024.

To the extent Plaintiff asserts a *Monell* claim for failure to train and supervise, the claim similarly fails. In order to assert a claim for failure train to or inadequate training, the plaintiff must allege a deliberate indifference to the rights of persons with whom the law enforcement official(s) come into contact. See *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1351, 1359 (2011); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989) Plaintiff's passing conclusory assertions suggesting a lack of supervision and training—unsupported by specific facts—are insufficient. Thus, warranting dismissal of the claim without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants motion to Dismiss Plaintiff's Complaint in its entirety. Plaintiff's First Amendment retaliation claim is dismissed without prejudice except as to those claims premised an alleged on impermissible searches, fabricated misbehavior report for possession of contraband and defamation which are dismissed with prejudice. Plaintiff's *Monell* claim is dismissed without prejudice.

Generally, *pro se* plaintiffs are allowed an opportunity to amend their complaint before the Court will dismiss it with prejudice. *Owens v. N.Y.C. Dep't of Sanitation*, No. 11-CV-

8297(ALC), 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013) ("[A] court should grant leave to amend [to a pro se litigant] at least once before dismissing [a complaint] with prejudice"); *Breer v. Maranville*, No. 12-CV-0053, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012) ("The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotation marks omitted).

The Court emphasizes that to the extent Plaintiff elects to file an Amended Complaint, he should bear in mind that the Amended Complaint will replace not supplement his initial complaint so any claims, facts, or attachments that Plaintiff wishes the Court to consider going forward must be within or attached to the Amended Complaint. This means that his previous complaint and other filings will no longer be the operative documents containing his pleadings and exhibits—everything that is essential must be contained in or attached to the Amended Complaint.

Separately, the Court advises Plaintiff that he should strive towards producing an accessible, concise, and simple statement of his claims. At this point in the litigation, Plaintiff is not required to provide evidence to prove his claims, instead he should focus on including factual allegations in the complaint that allege plausible claims for relief. Recognizing the apparent challenges Plaintiff has faced collecting his exhibits and providing them all in one single filing, the Court will afford Plaintiff a longer than usual deadline. Accordingly, Plaintiff is directed to file his Amended Complaint on or before December 18, 2024. Should Plaintiff file an Amended Complaint, the Defendants are directed to answer or otherwise respond by January 15, 2025, and the parties are directed to confer, complete, and file a Case Management Plan and Scheduling Order (blank form attached) by February 19, 2025. If Plaintiff fails to timely file an Amended

Complaint, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 22.

Dated: November 07, 2024
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge