Jianqiao Lu
*Pro Se* Plaintiff
WCDOC #265008
PO Box 10
Valhalla, NY 10595-0010
lu@luvhermans.com

November 19, 2024

<u>Via Email</u>
The Honorable Nelson S. Román
United States District Judge
c/o Pro Se Intake Unit
Charles L. Brieant Jr. Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

**RE:   LU v. HERMANS, 7:24-CV-1023 (NSR)**

Dear Judge Román:

I am the *pro se*, incarcerated Plaintiff in the above-referenced action. Pursuant to Local Civil Rule 6.3, I respectfully submit this letter-motion to request that the Court reconsider its November 7, 2024 Opinion and Order ("Opinion") dismissing my First Amendment retaliation claim. (*See* ECF 29 or 2024 WL 4712353.)[1]

**ABBREVIATED FACTS[2]**

Since October 25, 2021, I have been in the custody of the Westchester County Department of Correction.[3] Between September 18 and 20, 2023, while performing my duties as an inmate worker, I was subjected to a series of discriminatory and suspicionless strip searches. On September 22, 2023, hours after I handed a grievance to Defendant George Hermans ("Captain Hermans") challenging the propriety of the strip searches, my cell was targeted for a

---

[1] All following pincites to the Court's Opinion use the Westlaw pagination, not the ECF pagination.

[2] *See generally* Complaint ("Compl.") (ECF 1).

[3] In reciting the facts of this case, the Court highlights the criminal charges giving rise to my incarceration—"gun possession." (Opinion at *1.) But that fact is nowhere to be found in the complaint or in the parties' moving papers. It is unclear why the Court felt the need to divulge that irrelevant piece of information. Indeed, this seems to be the only time the Court has disclosed an inmate-plaintiff's underlying crime in a § 1983 prison-condition action.

1

shakedown. I subsequently received a contraband charge for possessing stationery items (pens, highlighters) that during past cell searches had been neither confiscated nor labeled contraband.

At a disciplinary hearing that followed, Defendant Sulahuddeen Azim ("Captain Azim") remarked: "I see why your cell got searched." I pleaded guilty to possessing the pens and highlighters, and, despite my spotless disciplinary history, received a disproportionately severe set of sanctions: 20 days' punitive confinement, a cell downgrade, and termination from four coveted work details.

Following these events, multiple subordinate officers commented on Defendants' retaliatory animus, with one suggesting that I "write to Captain Hermans" and tell him I have "learned my lesson," and others indicating that it would be "up to Captain Hermans" if I could get another job.

As a result of Defendants' actions, I suffered economic, reputational, and emotional injuries. On February 12, 2024, after exhausting all administrative remedies, I commenced the instant 42 U.S.C. § 1983 action.

## STANDARD OF REVIEW

The standard for reconsideration under Rule 6.3 is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Dorris v. Danone Waters of America*, No. 22-CV-8717(NSR), 2024 WL 4792048, at *2 (S.D.N.Y. Nov. 14, 2024) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

## DISCUSSION

Before proceeding, I hereby voluntarily dismiss, with prejudice, the *Monell* claim against Defendant Westchester County (COUNT II). This motion thus deals with only the portion of the Court's Opinion and Order dismissing my First Amendment retaliation claim against Defendants Hermans and Azim (COUNT I).

**I.     The Court should clarify its position on the checkmate doctrine.**

Suppose a prison official tells an inmate accused of an infraction that had he not filed grievances challenging prison policy, he would never have been charged. The inmate admits to the infraction but nonetheless claims retaliatory enforcement. Does that admission of guilt shield the prison official from liability under § 1983?

This Court appears to have answered that question in the affirmative. *See* Opinion at *4 (concluding that "when an inmate freely admits to or fails to challenge the veracity of allegations contained in a misbehavior report[], and is afforded a hearing and an appeal process, such misbehavior can no longer serve as a basis for a retaliat[ion] claim"). In so holding, the Court has

implicitly endorsed the so-called checkmate doctrine, under which an inmate-plaintiff's First Amendment retaliation claim is "checkmated," *i.e.*, foreclosed, by an actual violation of a prison rule. *See, e.g.*, *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994). Although still on the books in the Eighth, Tenth, and Eleventh Circuits, the checkmate doctrine has been rejected by at least six other courts of appeals:

| Circuit Split on Checkmate Doctrine | | | |
|---|---|---|---|
| **FOR** 👍 | | **AGAINST** 👎 | |
| 8th Cir. | *Henderson v. Baird*, 29 F.3d 464, 469 (1994) | 3d Cir. | *Watson v. Rozum*, 834 F.3d 417, 426 (2016) |
| 10th Cir. | *Requena v. Roberts*, 893 F.3d 1195, 1211 (2018) | 4th Cir. | *Martin v. Duffy*, 977 F.3d 294, 306 (2020) |
| 11th Cir. | *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (2011)<br><br>**But see** *Sears v. Roberts*, 922 F.3d 1199, 1210 (2019) (Martin, *J.*, concurring) (criticizing the checkmate doctrine and inviting the en banc court to overrule *O'Bryant*) | 5th Cir. | *Woods v. Smith*, 60 F.3d 1161, 1166 (1995) |
| | | 6th Cir. | *Maben v. Thelen*, 887 F.3d 252, 261 (2018) |
| | | 7th Cir. | *Cain v. Lane*, 857 F.2d 1139, 1145 (1988) |
| | | 9th Cir. | *Bruce v. Ylst*, 351 F.3d 1283, 1289 (2003) |

  Proponents of the checkmate doctrine largely argue that it is necessary to stem the tide of frivolous prisoner litigation. *See, e.g.*, *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) ("Any other rule would allow a prisoner to openly flout prison rules after filing a grievance and then bring a claim under section 1983 arguing that prison officials disciplined him in retaliation for his filing a grievance."); *O'Bryant*, 637 F.3d at 1216 ("To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction *after* having filed a grievance.") (emphasis in original).

  Opponents of the checkmate doctrine, on the other hand, contend that it overcorrects for the problem and affords prison officials *carte blanche* to retaliate against outspoken inmates. *See, e.g.*, *Orebaugh*, 910 F.2d at 530 (Heaney, *J.*, dissenting in part) (arguing that the doctrine "immunizes from review any trivial disciplinary charge that prison officials can support with some evidence, allowing such officials to inhibit prisoners' constitutional right of access to grievance procedures with impunity"); *Woods*, 60 F.3d at 1165 (stating that the doctrine "would unfairly tempt corrections officers to enrobe themselves and their colleagues in what would be an absolute shield against retaliation claims"); *Watson*, 834 F.3d at 430 (Ambro, *J.*, concurring) ("If officials were allowed to hunt for every minor instance of misconduct in an effort to punish inmates for their speech, the First Amendment would ring hollow inside a prison's walls."); *Sears*, 922 F.3d at 1210 (Martin, *J.*, concurring) ("Neither a finding that due process was

accorded nor a finding that the disciplinary infraction happened should dispose of an inquiry into why officials took the action they did.").

The Second Circuit has never addressed the checkmate doctrine in a published opinion. However, in a recent summary order, the court revived a First Amendment retaliation claim where the inmate-plaintiff admitted to possessing contraband. *See Kotler v. Boley*, No. 21-1630, 2022 WL 4589678 (2d Cir. Sept. 30, 2022). That decision perhaps signals the Second Circuit's inclination to rule against the checkmate doctrine in an appropriate case.

The present case, it is respectfully suggested, would serve as an ideal vehicle for the Second Circuit to resolve that important question and to provide guidance for a situation that is frequently encountered in prisoner litigation. This Court should thus clarify its position on the checkmate doctrine so as to permit effective appellate review. If the Court indeed agrees with the Eighth, Tenth, and Eleventh Circuits, then my retaliation claim is barred, as a matter of law, by the conceded violation of a prison rule. In this event, any amendment of the complaint would be futile and the entire action must be dismissed with prejudice. Conversely, if the Court declines to adopt the checkmate doctrine, it should reinstate my retaliation claim for reasons stated below.

## II. Absent the checkmate doctrine, the complaint states a *prima facie* claim of First Amendment retaliation.

### A. A pretextual cell search and its concomitant consequences can constitute adverse action.

Despite *Kotler*'s striking resemblance to this case and the parties' efforts to bring it to the Court's attention (*see* ECF 18 at 3-4, ECF 23 at 19-22), the Court does not appear to have considered it in determining the motion to dismiss. There, as here, the plaintiff was targeted for a cell search shortly after filing a grievance; there, as here, prison officials discovered "contraband" that normally would not result in discipline; there, as here, the questionable contraband charge was used to impose sanctions on the plaintiff, such as punitive confinement; there, as here, prison officials argued that there were legitimate reasons to discipline the plaintiff so it was not retaliation. *See generally Kotler*, 2022 WL 4589678.

The Second Circuit reversed Judge Karas, who had held, as this Court now does, that because an inmate has no reasonable expectation of privacy in his or her prison cell, a cell search, even if pretextual or retaliatory in nature, cannot sustain a First Amendment retaliation claim. *See Kotler*, 2022 WL 4589678, at *2; *cf.* Opinion at *4. Rejecting that rationale, the Second Circuit agreed with Kotler that "the question is not whether the cell search itself was an adverse action, but whether the overall and collective actions of the defendants constituted adverse action." *Kotler*, 2022 WL 4589678, at *2 (internal quotation marks omitted). Other district courts in this circuit have similarly taken this "collective action" approach when adjudicating prison retaliation claims. *See, e.g., Wright v. Snyder*, No. 21-CV-104(SVN), 2023 WL 6379451, at *10 (D. Conn. Sept. 30, 2023); *Phelan v. Thomas*, No. 10-CV-11(GLS)(DJS), 2017 WL 519246, at *3 (N.D.N.Y. Feb. 8, 2017); *Stewart v. Richardson,* No. 15-CV-9034(VB),

2016 WL 7441708, at *5 (S.D.N.Y. Dec. 27, 2016); *Rodriguez v. McClenning*, 399 F.Supp.2d 228, 239-40 (S.D.N.Y. 2005).

An adverse action in the retaliation context is any action that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citation omitted). Courts assess adverse action by "look[ing] to the specific circumstances in which retaliation claims arise." *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020). Here, setting aside the specific allegation that similarly situated individuals—*i.e.*, other inmate workers—were *actually* deterred from filing grievances by Defendants' actions (*see* Compl. ¶ 33), the totality of the circumstances surrounding the cell search, construed in the light most favorable to me, more than satisfies that standard.

As alleged, I suffered an unusually intrusive cell search that "left my cell in shambles, with legal papers scattered all over the floor and family photos damaged by water." (Compl. ¶ 17.) I was subsequently charged with possessing contraband—pens and highlighters that "during past cell searches had never been confiscated from my cell." (*Id.* ¶ 21-23.) This *de minimis* disciplinary infraction then resulted in severe sanctions, including 20 days' keeplock, a cell downgrade, and termination from four coveted trustee positions that had generated a weekly salary of $195. (*See id.* ¶¶ 11, 31.) Moreover, Captain Hermans "embarked on a weeks-long smear campaign to destroy my reputation, "falsely and repeatedly claiming to other prison officials that I had "possessed drugs."[4] (*Id.* ¶ 28.) Defendants also instituted a de facto ban on my reemployment, even though jail policy provides otherwise. (*Id.* ¶ 36.)

It is true that "prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Hayes*, 976 F.3d at 272 (citation omitted). But prisoners are not carved out of stone, and no prisoner of ordinary firmness would dare exercise their First Amendment rights if they knew doing so would strip them of a source of income or plunge them into a campaign of harassment. This Court thus erred in concluding that I did not suffer adverse action.[5]

### B.    The complaint sufficiently establishes a causal connection between my protected conduct and the adverse action.

---

[4] In its Opinion, the Court twice references Captain Hermans's smear campaign as lasting only one week (*see* Opinion at *2, 5), while the complaint reads "weeks-long." This does not appear to be a legibility issue as the complaint is computer-generated and text-searchable. The Court also incorrectly states that I admitted to possessing drugs. (*See* Opinion at *5.) To be clear, I did no such thing. (*See generally* Compl.) It goes without saying that a court should not distort or invent facts to suit its own narrative of a case.

[5] Although the Court purports to grant leave to amend, its partial, with-prejudice dismissal of a single claim renders any amendment impossible. For example, the court bars me from repleading a retaliation claim premised on the cell search. (*See* Opinion at *4.) But as discussed above, all of the adverse actions I suffered are traceable to—and inseparable from—the cell search. Accordingly, should the Court deny reconsideration, I will not be filing an amended complaint.

The Court's brief analysis of my First Amendment retaliation claim does not separately address the question of causation. To the extent that the Court could not infer a causal link between my grievance filing and the ensuing adverse action, it has overlooked the complaint in four key respects.

*First*, in *Kotler*, the Second Circuit found causation where the plaintiff received a contraband charge for an item that "would ordinarily have been thrown away instead of resulting in a disciplinary report and confinement." 2022 WL 4589678, at *3. The court deemed that allegation sufficient to withstand, at the motion-to-dismiss stage, any nonretaliatory justification advanced by the defendants. *See id.* If anything, that reasoning applies with even greater force here, where I was disciplined for possessing pens and highlighters that "during past cell searches" and absent retaliatory motives "had never been confiscated from my cell," *let alone thrown away*. (Compl. ¶ 23.)

*Second*, it is well established that temporal proximity between protected activity and adverse action serves as potent circumstantial evidence in retaliation claims. *See, e.g.*, *Kirton v. Doe*, No. 20-CV-10860(KM), 2024 WL 809904, at *8 (S.D.N.Y. Feb. 27, 2024) (finding a temporal relationship of three days sufficient to establish causation, and collecting cases); *accord Kotler*, 2022 WL 4589678, at *3 (one day). Here, my cell was targeted for a search *hours* after I handed a grievance to Captain Hermans. (*See* Compl. ¶¶ 15-17.) Doubly suspicious is the even closer temporal proximity—*45 minutes*—between when I resubmitted the grievance to one of Captain Hermans's subordinates and when I received the misbehavior report. (*See id.* ¶¶ 19-21.)

*Third*, the verified complaint contains numerous statements made by Defendants and their agents suggesting retaliatory animus. For example, during the disciplinary hearing, Captain Azim remarked that "I see why your cell got searched"—an unmistakable reference to my grievance filing. (Compl. ¶ 29.) Shortly after I was found guilty of the infraction and sentenced to keeplock, Officer A.G.[6] stated "I heard you were set up." (*Id.* ¶ 48.) Around the same time, Officer J.A. and Sergeant C.C. jokingly called me a "fucking idiot" for handing Captain Hermans a grievance. (*Id.* ¶ 49.) Officer I.A. suggested that I "write to Captain Hermans" and tell him I have "learned my lesson." (*Id.* ¶ 50.) Officers T.A., K.B., and B.C., when asked whether I could return to work, replied that it would be "up to Captain Hermans." (*Id.* ¶ 51). These party-opponent statements, which the Court must accept as true, lend further support to an inference of causation: it is simply improbable that multiple direct subordinates would refer to Captain Hermans by name if he did not hold a personal grudge against me.

*Lastly*, the complaint references a written response from Sergeant S.B. regarding my grievance challenging the strip searches. That response attributes the strip searches I had endured to the discovery of "contraband" in my cell. (*See* Compl. ¶ 38.) But recall, the strip searches, which had occurred between September 18 and 20, 2023, *predate* the discovery of the purported contraband in my cell on September 22, 2023. (*See* Compl. ¶¶ 12-14, 17, 22.) This creates an

---

[6] In the complaint, I use only the initials of nonparty officers to protect them from harassment/retaliation by Defendants.

6

inference that the contraband charge was (at least in part) intended to retroactively manufacture a justification for the otherwise impermissible strip searches.[7]

The Court, while eager to take judicial notice of irrelevant matters outside the record, *see supra* note 3, has by and large ignored these well pleaded facts in the complaint. It is true that at times I allege Defendants' actions "on information and belief." But those allegations are not—as the Court would have it—"nothing more than conjecture."[8] (Opinion at *4.) Rather, they are based on corroborating circumstances and statements that the Court appears to have overlooked. Properly construed, the complaint adequately establishes causation.

## CONCLUSION

For the foregoing reasons, reconsideration should be granted. The Court should first clarify its stance on the checkmate doctrine so as to permit effective appellate review. Under that doctrine, the complaint is beyond repair and must be dismissed with prejudice. Absent the checkmate doctrine, however, the complaint plausibly states a First Amendment retaliation claim and should be reinstated as to COUNT I.

Thank you for your consideration.

Respectfully submitted,
/s/ Jianqiao Lu
Jianqiao Lu[9]

cc:    Westchester County Attorney's Office
       Robert P. Taglia, Assistant County Attorney

---

[7] Defendants attached the grievance in question to their motion to dismiss. (*See* ECF 24, Declaration of Robert Taglia, Exhibit B.) Tellingly, that document is incomplete and does not contain Sergeant S.B,'s response as referenced in the complaint.

[8] The Court should also take into account the challenges an inmate faces when pleading a retaliation claim against senior prison officials. Such officials often issue retaliatory orders behind closed doors, which orders are then carried out through intermediaries. A direct nexus between any adverse action and those high-ranking officials is thus difficult to prove without the benefit of discovery.

[9] This document has been telephonically transcribed and prepared by a nonincarcerated individual under my direction. *See* Instructions: Email Pro Se Filings (April 2021), available at https://www.nysd.uscourts.gov/sites/default/files/2021-04/2021-04-21-Email-Instructions-pro-se-filings-final.pdf (permitting typed signatures and third-party emails).